PETER SIEVERTSEN, Appellee, v. PAXTON-ECKMAN CHEMICAL
COMPANY et al., Appellants.

EVIDENCE:   Production, Etc.—Denial of Order to Produce—Discre-
1   tion.   It is within the fair discretion of the court to deny a
belated application for the production of exhibits of but trifling
materiality, especially when to grant the application would
necessarily work a continuance of the cause.

CONTRACTS:   Validity of Assent—Ratification—Absence of Intent
2   to Ratify.   Ratification of a voidable contract may not exist *in
the absence of an intention to ratify.*   So held where the maker
of a voidable note, in order to obtain jurisdiction over it,
caused the payee to send it into this state, under a deceptive
inference that he (the maker) would pay it.

COURTS:   Jurisdiction—Fraudulently Acquired Jurisdiction Over
3   Fraud-Induced Contract—Effect.   The holder of a fraud-in-
duced contract, who has been tricked into sending it to a place
where the maker could obtain jurisdiction over it, should plead
such deception in abatement of the jurisdiction of the court—
not as a bar to the fraud attending the execution of the con-
tract.   The sin of fraudulently obtaining jurisdiction *does not
cleanse the note of its fraud.*

TRIAL:   Instructions—Form, Requisites, and Sufficiency—Intoxica-
4   tion as Bearing on Contract Validity.   Instruction with refer-
ence to the effect of intoxication on the validity of a contract
reviewed, and held not subject to the quite hypercritical objec-
tion made.

*Appeal from Carroll District Court.*—M. E. HUTCHISON,
Judge.

JANUARY 11, 1918.

ACTION of replevin for the possession of a note exe-
cuted by the plaintiff, as maker, to the defendant Paxton-
Eckman Chemical Company, as payee.   The ultimate ques-
tion in controversy is whether the note was obtained from
the plaintiff by fraud, and, therefore, whether he is entitled
to the possession of the same as having rescinded the fraud-

ulent transaction. There was a verdict for the plaintiff, and the defendant appeals.—*Affirmed.*

*A. H. Murdock* and *Reynolds & Meyers,* for appellants.

*L. H. Salinger,* for appellee.

EVANS, J.—This case was before us upon a former appeal. *Sievertsen v. Paxton-Eckman Chemical Co.,* 160 Iowa 662. The salient facts are quite fully stated in the opinion on such former appeal. At the time of the transaction in question, the plaintiff was a resident of Carroll County. Wunder and Sinderson, agents of the Paxton Company, called upon him at his home. Wunder was an old friend. All three went together to the town of Dedham, where they spent some time in a saloon and had a number of "drinks" together, which cost the plaintiff nothing (apparently). Before the parties separated, the plaintiff had signed a contract of agency and an order for nearly $1,000 worth of stock food and a note for a like amount for the purchase price. His contention is that he did not know that he had signed anything but a contract of employment for his son, and especially that he did not know that he had signed any note or other obligation to buy the stock food or to pay therefor. His testimony was that he was unable to read anything without spectacles, and that he had none with him; and further, that he was unable to read English at all; that Wunder assumed to befriend him in the reading of the papers which he signed; and that he was deceived by Wunder and Sinderson as to the contents of the papers thus signed by him. It is further claimed by him that Wunder and Sinderson intentionally caused his intoxication to a considerable degree for the purpose of being able to deceive him the more readily; and that he was under the influence of intoxicating liquors to such a degree as to ren-

der him mellow, and more easily deceived than he other-
wise would have been. A few days thereafter, he received
a letter from the defendant, advising him of the receipt of
his note. He claims that this was his first knowledge that
he had signed a note. About the same time, he received
notice of the arrival of a consignment of the stock food,
which he refused to receive. He thereupon sought advice
from an attorney. The attorney conceived a ruse whereby
he might get the note back into Carroll County, the defend-
ant being a nonresident of the state. The attorney, there-
fore, caused a letter to be addressed to the defendants by
Jones & Stephany, which letter was as follows:

"Mr. Peter Sievertsen of Dedham, Iowa, was in our of-
fice today and requests us to write you to ascertain whether
or not you would discount the note given by him for stock
food on the 12th inst., through your Mr. Sinderson. He
tells us that he will take the note up if you will discount
it, say five per cent. If you wish to dispose of it in this
manner, kindly send the same at once to either of the banks
in this town, and we will write him of its being here and
request him to come in and take it up. Yours truly,

"Jones & Stephany."

The defendant company immediately acceded to the
suggestion of the letter, and sent the note to one of the
banks at Carroll. The plaintiff immediately notified the
defendant of his rescission of the contract, and demanded
possession of the note. He made the same demand upon
the local bank in whose immediate possession the note was.
This was followed immediately by the service of a writ of
replevin, and possession was thereby obtained. The right
of possession was predicated in his petition upon the
grounds already stated. These grounds were all denied in
the answer. The defendant further pleaded a ratification,
waiver, and estoppel, and predicated the same upon the let-
ter above set forth.

I. The first error assigned is directed

**1. EVIDENCE: production, etc.: denial of order to produce: discretion.** to the refusal of the trial court to order the plaintiff to produce in court the note which was the subject of the controversy. It appears that, pursuant to a favorable verdict on the first trial, the note was delivered to the plaintiff. Before the second trial was had, he had removed to the state of Minnesota. The second trial in the district court was put in the assignment for Monday, December 8th. The plaintiff arrived at the county seat on the afternoon of Saturday, December 6th. On that day, the defendant filed an application for a rule to produce the note. This application was, at the same time, sustained *pro forma*, without the actual knowledge of the plaintiff or his attorney. The ruling was first discovered by the plaintiff on Monday. He immediately filed an application for the setting aside of the order, and supported the same with a showing of facts. These facts were, in substance, that the note was among the private papers of the plaintiff in Minnesota, and that the production of the same at that time would require his return to his home to search for the same. He was under considerable physical disability. No advance notice to produce had been served upon him or upon his attorney. The trial court set aside the rule, and this is the basis of appellant's complaint at this point. We think the showing on behalf of the plaintiff was abundant. To have imposed the rule upon him would have necessitated delay, and the taking of the case out of the assignment. The fact that the appellant had failed to give timely notice to plaintiff or his attorney was at least a proper circumstance for the consideration of the court. The importance of the note as evidence upon the issues was comparatively slight. The refusal of the rule was clearly within the discretion of the court.

II. It is urged that the writing of
the letter above quoted, and the acceptance
thereof by the defendant, were necessarily a
ratification of the note. The point is not
without its force, but we held to the contrary
in *Kennedy v. Roberts*, 105 Iowa 521. The holding in that
case disposes, also, of several of the reversal points of
appellant, based upon the same claim of ratification.
Whether an estoppel could be sustained upon the record, as
distinguished from a ratification and waiver, is a ques-
tion which is quite fully considered in the brief of the ap-
pellee. We find no such contention on the part of the appel-
lant, except in its reply brief. It requested no instruction
on the question of estoppel, nor was such question made the
basis of any exception to the instructions given. We need
not, therefore, consider it.

*2. CONTRACTS: validity of assent: ratification: absence of intent to ratify.*

We may, however, say broadly that the
ruse resorted to by plaintiff has neither
commended itself to the court nor com-
manded from the court an extended arm.
The plaintiff is permitted to stand on the
merits of his original cause of action, not by reason of his
ruse, but in spite of it.

*3. COURTS: jurisdiction: fraudulently acquired jurisdiction over fraud-induced contract: effect.*

If the defendant was wronged by the deception, it was
entitled to appropriate redress. But such redress had its
own limitations, and carried no special premium. The in-
jury into which defendant was led by such deception per-
tained wholly to remedy and jurisdiction, and not at all to
the substantive cause of action which had fully accrued to
plaintiff by reason of the fraud of defendant's agents, if
fraud there was. By means of the ruse, plaintiff was en-
abled to confer jurisdiction upon the Iowa court over the
note which he alleged to be void, and to obtain possession
thereof by writ of replevin. His alleged cause of action
was neither better nor worse because of these remedial

proceedings. If the defendant had pleaded the deception in abatement of the jurisdiction and in support of a quashing of the writ of replevin, quite a different question would be presented. Clearly, such abatement if obtained, would be full redress for the injury suffered. But plaintiff's cause of action for the original fraud would still subsist. The defendant pleaded the estoppel as a complete bar to plaintiff's cause of action. In so pleading, it was not seeking redress, but profit and premium.

If the subsequent deception practiced by plaintiff, in the pursuit of a remedy, should be deemed to have cleansed the original fraud practiced upon him, then the defendant's injury would be transformed into a beneficence to itself of great magnitude. Though such transformations sometimes occur in human experience, they come by the ways of an overruling Providence, and are not the objective of judicial remedies.

Without palliating in any degree the deceptive means adopted by plaintiff to obtain jurisdiction, we think that the estoppel thereby created could reach no further than in abatement of the jurisdiction, and that it could not operate in bar of the existing cause of action. It was pleaded only in bar, and not in abatement. If the plea had been sustained, the plaintiff could not thereafter have maintained either a defense to the note or an independent suit for damages.

In resorting to the ruse, the attorney for plaintiff (who does not appear in this case) only used the same weapon *for* his client which the defendant had used *upon* his client, without any other ultimate motive than the just protection of his client. The motive was meritorious, though the method was wrong. The method adopted was entitled to no aid from the court to give it success as a ruse. Neither did it deserve additional penalty. This is emphasized by the subsequent justification of plaintiff on the merits of his case.

The case has been twice tried, and plaintiff has obtained a verdict on the merits upon each trial.

4. TRIAL: in-
structions:
form, requi-
sites and suf-
ficiency:   in-
toxication as
bearing on
contract val-
idity.

III.   Complaint is made of an instruction of the court upon the subject of the alleged intoxication of the plaintiff.   The instruction complained of was as follows:

"The degree of intoxication which would be sufficient in law to entitle a party to rescind a contract must be such that the party was so completely under the influence of intoxicants as not to have been able to understand the effect and consequences of the business transaction.   In the case before you, there is no showing that plaintiff was under such degree of intoxication; but if you find that Wunder and Sinderson, or either of them, induced plaintiff to drink intoxicating liquors for the purpose of enabling them the more readily to gain advantage over him, and enable them the more readily to obtain his signature to the note in controversy by the use of the representations alleged by plaintiff to have been made by them, or either of them, you have a right to take into consideration for what you may deem it entitled the plaintiff's condition with respect to intoxication, if any, so induced and brought about, in connection with all the other facts and circumstances surrounding the making and signing of the note in controversy, for the purpose of determining whether or not the plaintiff was induced to sign the note in controversy by the alleged false representations and statements of Wunder and Sinderson, or either of them."

The complaint is that it "authorizes the jury to consider the fact that intoxicating liquors were purchased by Wunder and Sinderson, in determining whether or not plaintiff was induced to sign the note by false representations, regardless of whether the drinking of said Sievertsen of said liquors had induced intoxication or not."   We do not think

that the instruction will fairly bear the interpretation thus put upon it.

The foregoing are the principal reversal points which are argued in the brief of appellant. We see nothing in the record before us that would justify our interference with the judgment. The judgment below is, therefore,—*Affirmed*.

Preston, C. J., Ladd and Gaynor, JJ., concur.